# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Stuart Nitzkin,                                          Case No. 23-cv-0175 (NEB/DLM)

               Petitioner,

v.                                                       **REPORT AND**
                                                         **RECOMMENDATION**

B. Eischen,

               Respondent.

---

This matter is before the Court on Petitioner Stuart Nitzkin's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1.) In his Petition, Mr. Nitzkin claims that various policies of the Federal Bureau of Prisons ("BOP") have resulted in the incorrect calculation of his earned First Step Act time credits ("FTCs") and his projected release date. Mr. Nitzkin has also filed a Motion for Summary Judgment in which he largely reiterates the arguments he laid out in his Petition. (Doc. 10.) In his Petition, Mr. Nitzkin does not seek relief for himself only, but asks the Court to order the BOP to change its policies that he thinks improperly affect the calculation of other individuals' FTCs and release dates.

Mr. Nitzkin's Petition and Motion for Summary Judgment come before this Court for review under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts,[1] and have been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons below, the Court recommends that Mr. Nitzkin's Petition

---

[1] Mr. Nitzkin does not bring his habeas petition pursuant to 28 U.S.C. § 2254. Nevertheless, the Court may apply the Rules Governing Section 2254 Cases to his Petition. *See* Rule 1(b).

(Doc. 1) be denied, his Motion for Summary Judgment (Doc. 10) also be denied, and this action be dismissed without prejudice.

## BACKGROUND

### I.    Procedural background.

Stuart Nitzkin was sentenced to a 41–month term of imprisonment, followed by a 1–year term of supervised released after he was convicted of Wire Fraud in violation of 18 U.S.C. § 1343. (Doc. 6 ¶ 3; *id.*, Ex. A at 2.) He started his incarceration on February 28, 2022, at Federal Prison Camp Duluth ("FPC Duluth"). (Doc. 6 ¶ 2; *id.*, Ex. A at 1; Doc. 13, Ex. B at 1.). Mr. Nitzkin is eligible to earn FTCs under 18 U.S.C. § 3632(d). (Doc. 6 ¶ 4; *id.*, Ex. B at 1.) He has been assigned a Low or Minimum PATTERN score since his first assessment in March 2022. (Doc. 6 ¶ 5; *id.*, Ex. B at 1.) Mr. Nitzkin has earned 10 FTCs for every 30 days of programming from the start of his incarceration until he began to earn 15 FTCs for every 30 days of programming on September 24, 2022. (Doc. 13, Ex. B at 1.) He has had no program days disallowed. (*Id.*)

Mr. Nitzkin filed his Petition on January 23, 2023. (Doc. 1.) Respondent filed his Response on February 27, 2023, in which he represents that Mr. Nitzkin's projected release date, with good time credit, was January 23, 2025, but with the inclusion of the 110 FTCs he had earned to that point, his projected release date was October 5, 2024. (Doc. 6 ¶¶ 3, 11; *id.*, Ex. A at 3, Ex. F.)

On May 11, 2023, Mr. Nitzkin filed his Motion for Summary Judgment. (Doc. 10.) At the conclusion of his motion, Mr. Nitzkin states that he would be "placed in home confinement as of May 9, 2023, as a beneficiary of CARES [Coronavirus Aid, Relief, and

Economic Security] [Act]." (Doc. 10 at 9.) Based on this information, the Court reviewed publicly accessible BOP records which, at the time, listed Mr. Nitzkin's projected release date as July 27, 2024. (Doc. 11 at 1.) The Court therefore Ordered supplemental briefing from the parties to explain "the change in Mr. Nitzkin's projected release date, and how, if at all, the change impact[ed] his habeas claim." (*Id*. at 2.) Mr. Nitzkin did not respond to the Court's Order. On June 7, 2023, Respondent filed a Letter with the Court explaining that Mr. Nitzkin had been transferred to home confinement on May 9, 2023, under the CARES Act. (Doc. 12 at 1.) Respondent further explained that, as of May 27, 2023, Mr. Nitzkin had earned 195 days of FTCs toward early release, and no FTCs toward pre-release in a residential re-entry center ("RRC") or home confinement. (*Id.*) Accounting for these earned FTCs, Mr. Nitzkin's projected release date was July 12, 2024, and the BOP "anticipate[d] that he [would] continue to earn FTCs on home confinement until he is released or has earned the maximum of 365 days of FTCs that can be applied toward early release, whichever occurs first." (*Id*. at 2.) In preparation for drafting this Report and Recommendation, the Court has again recently reviewed publicly accessible BOP records which now list Mr. Nitzkin's release date as March 29, 2024. BOP, *Find an Inmate*, https://perma.cc/3HWM-UUF3 (last accessed Jan. 19, 2024).

## II.    The First Step Act.

Congress enacted the First Step Act ("FSA") in 2018, to reduce the federal prison population while also creating mechanisms for maintaining public safety by reducing

recidivism risk. Congressional Research Service, *The First Step Act of 2018: An Overview*, 1 (2019), https://perma.cc/9JDZ-H6JH. Through the FSA, Congress directed the United States Attorney General to develop a risk and needs assessment system to determine the recidivism risk of each incarcerated person, their specific programing needs based on that assessed risk, and their classification according to their minimum, low, medium, or high risk for recidivism. 18 U.S.C. § 3632(a). The BOP uses the assessment system, called the PATTERN tool, to determine the type of evidence-based recidivism reduction ("EBRR") programming and productive activities ("PA") most appropriate for each incarcerated person. *Id*. § 3632(a)(3), (5), (b). Along with determining the most appropriate EBRRs and PAs, Congress also created a system of "time credits" and other incentives to encourage participation in EBRRs and PAs. *Id*. § 3632(d).

## III.    PATTERN Score and FSA Time Credits.

The BOP designed the PATTERN tool to assess both a person's risk of recidivism and their risk of violent or serious misconduct. *Id.* § 3632(a)(3). The tool assigns point values based on these characteristics: age (at first conviction and at time of assessment), disciplinary history, number of programs completed, technical or vocational courses, Federal Prison Industries, Inc. ("UNICOR") employment, drug treatment, and education, participation in the Inmate Financial Responsibility Program, sex-offender status (for men), criminal history score, history of violence, escape history, and education score. U.S. Dep't of Justice, *The First Step Act of 2018: Risk and Needs Assessment System*, 61–64 (2019), https://perma.cc/J7FH-5WKN; U.S. Dep't of Justice, *The First Step Act of 2018:*

*Risk and Needs Assessment System – UPDATE* 9, 39–41 (2020), https://perma.cc/2ATT-QG8F.

The PATTERN tool assigns a person points, considering the factors listed above. *See The First Step Act of 2018: Risk and Needs Assessment System*, 58, Table 4. Each recidivism risk level—minimum, low, medium, or high—is assigned a range of total points, and the range depends on a person's gender and whether they were convicted of a violent offense. *Id.* A person's PATTERN score is not set in stone, and the BOP is required to periodically reassess a person's recidivism risk. 18 U.S.C. § 3632(a)(4).

Congress included incentives in the risk and needs system to encourage participation in a person's assigned EBRR programming and PAs. *See id.* § 3632(a), (d). Among these incentives are FSA "time credits" ("FTCs"). Under the FSA, eligible people who successfully complete their assigned EBRRs and PAs "shall earn 10 days of [FTCs] for every 30 days of successful participation in [EBRR] programming or [PAs]." *Id.* § 3632(d)(4)(A)(i). Additionally, a person whom the BOP determines to be at a minimum or low risk of recidivism, who does not increase their risk of recidivism over the course of two consecutive assessments, "shall earn an additional 5 days of [FTCs] for every 30 days of successful participation in [EBRR] programing or [PAs]." *Id.* § 3632(d)(4)(A)(ii).

FTCs "shall be applied toward time in pre-release custody or supervised release." *Id.* §§ 3632(d)(4)(c), 3624(g); 28 C.F.R. § 523.44(b)–(d). Pre-release custody includes either placement at a residential re-entry center ("RRC") or home confinement for the number of FTCs earned, *see* 18 U.S.C. 3624 (g)(2), and time limits on the length of pre-release placement are waived, *see id.* § 3624(g)(1). Under the FSA, if a person's sentence

includes a period of supervised release, the BOP may transfer that person to begin their supervised release term up to 12 months before their sentence otherwise ends. *Id.* § 3624(g)(3); 28 C.F.R. § 523.44(d).

The BOP may apply earned FTCs toward pre-release custody or early transfer to supervised release under 18 U.S.C. § 3624(g) only if an eligible person has: (1) earned FTCs in an amount that is equal to the remainder of their imposed term of imprisonment; (2) shown a demonstrated recidivism risk reduction through periodic risk assessments or maintained a low or minimum recidivism risk; and (3) had the remainder of their term of imprisonment computed under applicable law. *Id.* § 3624(g)(A)–(C); *see also* 28 C.F.R. § 523.44(b).

## VI.    Grace period for calculation of time credits.

On September 30, 2022, the BOP implemented an automated FTC calculation tool to calculate and credit FTCs to people each month during a person's regularly scheduled program review. (Doc. 6, Ex. D at 14–15.) When the BOP implemented the FTC calculation tool, many individuals experienced a reduction in the number of FTCs they had earned because they had not completed their Needs Assessment, or refused or declined to participate in their EBRRs and PAs. (*Id.*, Ex. E.) As a result, on November 17, 2022, the BOP announced a grace period to resolve incomplete Needs Assessments and program decline issues. (*Id.*)

The grace period extended from November 17–December 31, 2022, to allow individuals to complete any outstanding Needs Assessments and enable them to be awarded FTCs through the end of 2022. (*Id.*) But as of January 1, 2023, individuals are

precluded from earning FTCs until after their Needs Assessments are complete. (*Id*.) Additionally, if an individual declined to participate in a recommended program before December 31, 2022, it does not impact their ability to earn FTCs. (*Id*.) The BOP will only withhold FTCs if an individual declines to participate in recommended programing on or after January 1, 2023. (*Id*.) The BOP's automated FTC calculation tool was modified to reflect this grace period and the BOP began a nationwide recalculation of FTCs beginning on January 6, 2023. (Doc. 6 ¶ 10; *id., Ex. E.)

## ANALYSIS

In his Petition, Mr. Nitzkin asserts that the BOP's implementation of the FSA violates the law. (Doc. 1 at 6–8.) He bases this claim on four grounds. (*Id*.) First, he takes issue with the BOP's recidivism risk assessment and asserts that it must be part of the "intake process." (*Id*. at 6.) Second, he claims that the BOP's "18 month restriction that prohibits applying [FTCs] to . . . early release (to supervised release) is arbitrary, discriminatory, and unfair." (*Id.* at 7.) Mr. Nitzkin alleges that "[i]t's not the language nor intent of the law." (*Id*.) Third, Mr. Nitzkin claims that the BOP's refusal to include "[FTCs] as part of the 'statutory release date' is [a] violation of the statutory definition of 'release date' . . . in 18 U.S.C. § 3624 (a) & (b)." (*Id*.) And fourth, Mr. Nitzkin asserts that the BOP's "time factor policy implementation for § 3632(d)(4)(A) is arbitrary and unclear, and [a] violation of the law." (*Id*. at 8.) Particularly, Mr. Nitzkin objects to the BOP's alleged refusal to "give the additional 5 days of [FTCs] even after 2 consecutive assessments," its refusal to "pro-rate [FTCs]" and its failure to "give/implement a clear policy on giving the 5 days retro active toward all low-min. [recidivism risk] assessed inmates." (*Id*.)

7

Mr. Nitzkin does not seek relief for himself only. (*Id.* at 8.) Instead, he asks the Court to order the BOP to change its policies to ostensibly benefit all those within the BOP's custody who are eligible to earn FTCs. (*Id.*) Mr. Nitzkin makes four requests for relief. First, he asks the Court to, "[o]rder the BOP to stop disallowing FSA credit earnings" and "return all disallowed days or credits, and order BOP to comply to the law." (*Id.*) Second, he asks the Court to "[o]rder BOP to remove 18 month restriction and not to add any arbitrary restrictions other than clarified in the law." (*Id.*) Third, he asks the Court to "order the [BOP] to include [FTCs] to their 'statutory release date.'" (*Id.*) And fourth, he asks the Court to "order the BOP to issue the additional 5 days of [FTCs] after 2 low-min assessments," to "pro-rate the credits," and to "issue [FTCs] for all past days of min-low risk days." (*Id.*)

In response, the BOP argues that Mr. Nitzkin's petition should be dismissed because his claims either have become moot or have no merit. According to Respondent, the BOP has "properly calculated [Mr.] Nitzkin's FTCs and his projected release date in accordance with the current applicable statutes, regulations, and policies." (Doc. 5 at 15.)

## I.    To the extent Mr. Nitzkin seeks early pre-release custody, this is not a cognizable habeas claim.

"A district court may grant a writ of habeas corpus only if the petitioner 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Blocher v. Eischen*, No. 22-cv-678 (PJS/DTS), 2022 WL 1740649, at *3 (D. Minn. Nov. 3, 2022) (quoting 28 U.S.C. § 2241(c)(3)), *R. & R. adopted*, 2022 WL 17404447 (D. Minn. Dec. 2, 2022). A habeas petitioner, such as Mr. Nitzkin, may challenge only the fact or duration of

their confinement. *Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014); *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam). But if a person is not challenging either the fact or the duration of confinement, habeas is not the proper remedy, and the court lacks jurisdiction over the matter. *Johnson v. Birkholz*, No. 21-cv-2017 (PJS/LIB), 2022 WL 3135304, at *1 (D. Minn. Aug. 5, 2022) (citing *Spencer*, 774 F.3d at 469–71; *Kruger*, 77 F.3d at 1073). The question from the start is whether Mr. Nitzkin has a claim for which habeas relief is available. *Blocher*, 2022 WL 17406549, at *3; *see also Kruger*, 77 F.3d at 1073 ("The [petitioner's] label cannot be controlling.") (citation omitted). Thus, if Mr. Nitzkin's only claim were that he ought to be in an RRC or in home-confinement sooner, that claim would fail for a lack of subject matter jurisdiction. However, because FTCs may also be applied to begin supervised release early, *see* 18 U.S.C. § 3632(d)(4)(C), Mr. Nitzkin's claims are addressed below on their merits to the extent they may implicate the duration of his sentence.

## II.    Mr. Nitzkin's claim that the BOP failed to allow inmates to complete the surveys necessary to finish their Needs Assessment is moot.

In Ground One of his Petition, Mr. Nitzkin claims that people could not complete the surveys necessary to finish their Needs Assessments to determine their EBRR programming, and he asks the Court to Order the BOP to return all disallowed days or credits that resulted from the failure to complete such assessments. But on November 17, 2022, the BOP announced a grace period through December 31, 2022, to complete any outstanding Needs Assessments and allow people to earn FTCs through the end of 2022. (Doc. 6, Ex. E.) Mr. Nitzkin's FSA Time Credit Assessment from February 11, 2023,

shows that none of his program days have been disallowed. (*Id.*, Ex. F; Doc. 13, Ex. B.) Therefore, according to the BOP, Mr. Nitzkin's claim is moot.

An actual, ongoing case or controversy must exist for a federal court to have subject-matter jurisdiction over a case. U.S. Const., art. III, § 2, cl. 1. Generally, a case becomes moot, and courts lose subject-matter jurisdiction when "changed circumstances already provide the requested relief and eliminate the need for court action." *Hedeen v. Rardin*, No. 22-cv-2278 (NEB/DTS), 2023 WL 6065336, at *1 (D. Minn. Aug. 30, 2023) (quoting *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 791 (8th Cir. 2018) (cleaned up), *R. & R. adopted*, 2023 WL 6065330 (D. Minn. Sept. 18, 2023). The relief Mr. Nitzkin seeks—availability of the Needs Assessment survey and the recovery of any credits that the BOP withheld because he did not complete the survey—has been provided. As of February 11, 2023, after the BOP recalculated his FTCs, Mr. Nitzkin has zero disallowed program days. (Doc. 6, Ex. F.) Because the Court cannot provide the relief Mr. Nitzkin seeks, his claim is moot.

However, there are certain exceptions to the mootness doctrine that will allow a court to review a habeas petition even when the petitioner has already received relief. A habeas petition should not be dismissed as moot if

> (1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is properly certified class action suit.

*Hedeen*, 2023 WL 6065336, at *1 (quoting *Riley v. I.N.S.*, 310 F.3d 1253, 1257 (10th Cir. 2002). None of these exceptions apply here. First, Mr. Nitzkin has not identified any

cognizable collateral injury from allegedly being disallowed FTCs. Second, this is not the type of case capable of repetition but evading review because Mr. Nitzkin will not be incarcerated again for this same conduct. *Id.* (citing *In re Search Warrants Issued in Connection with Investigation of S. Cent. Career Ctr., W. Plains, Mo.,* 487 F.3d 1190, 1193 (8th Cir. 2007) (noting that the capable-of-repetition exception applies when there is a "reasonable expectation" that the same party "will be subjected to the same action again.") Third, the BOP is not free to resume its allegedly illegal practices at any time because Mr. Nitzkin has already been transferred to home confinement and were he to be returned to prison for some reason (i.e., a violation of his conditions of home confinement), it would be under different circumstances and therefore impossible for the BOP to repeat the same allegedly unlawful conduct Mr. Nitzkin challenges in his Petition. Finally, this case does not involve a class of petitioners. Thus, the Court finds that this claim is moot and should be dismissed.

### III. Title 18 § 3624(g)(3) requires the BOP to limit the number of FTCs applied toward early release.

In Ground Two of his Petition, Mr. Nitzkin contends that the BOP's limit on the number of FTCs that can be applied toward early release to a person's term of supervised release has no statutory basis and is arbitrary, discriminatory, and unfair. The BOP contends that Mr. Nitzkin's claim is contradicted by federal law and meritless.

Title 18 § 3624(g)(3) governs supervised release for risk and needs assessment participants. The statute states that

> [i]f the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after

11

> imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, *not to exceed 12 months*, based on the application of time credits under section 3632.

*Id.* (emphasis added); *see also* 28 C.F.R. § 523.44(d). It is clear from the statute's language that the BOP is not only permitted, but required, to limit the number of FTCs that may be *applied* toward a person's early release to supervised release to an amount "not to exceed 12 months" or, in other terms, 365 days. 18 U.S.C. § 3624(g)(3). The Court therefore finds that Mr. Nitzkin's claim that the BOP lacks a statutory basis, and that it is arbitrary, discriminatory, and unfair to limit the number of FTCs applied toward a person's early release to supervised release is meritless and should be dismissed.[2]

## IV.    Mr. Nitzkin's claim that the BOP is required to immediately apply his earned FTCs toward pre-release custody or supervised release is not ripe.

In Ground Three, Mr. Nitzkin appears to claim that he is entitled to have his FTCs immediately applied to his sentence computation. (Doc. 1 at 7.) But his claim is not ripe. Mr. Nitzkin is eligible to *earn* FTCs under 18 U.S.C. § 3632(d) because the offense he was convicted of is not listed as a disqualifying offense under § 3632(d)(4)(D). (Doc. 6 ¶ 4; *id.* Ex. B; *see* 18 U.S.C. § 3632(d)(4)(D).) But despite his eligibility to earn credits, he is currently ineligible for *application* of earned FTCs toward pre-release custody.

Mr. Nitzkin is currently ineligible to apply his FTCs to his sentence because his earned time credits do yet equal the number of days remaining on his sentence. The FSA

---

[2] The Court also questions whether Mr. Nitzkin's claim is ripe in any event. According to the record, he has not earned the statutory cap of FTCs that can be applied toward supervised release anyway. As such, his complaints that the cap is too small would appear to put the cart before the horse.

provides that a person is eligible to have time credits applied toward supervised release or pre-release custody only when they have earned time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). As of May 27, 2023, Mr. Nitzkin earned 195 days of FTCs with a statutory release date, accounting for good time credit, of January 23, 2025. (Doc. 13, Ex. C.) Therefore, a habeas petition requesting application of FSA time credits is premature because he has not yet earned enough time credits to equal the remainder of his term of imprisonment. *Moore v. Rardin*, No. 22-cv-2476 (NEB/TNL), 2022 WL 18542331, at *6 (D. Minn. Dec. 1, 2022) ("Because Petitioner's earned time credits (690 days) do not yet equal the remainder of his sentence (approximately 898 days), the Court agrees with Respondent that it would be premature 'to direct the BOP to adjudicate the credits at this time.'"), *R. & R. adopted*, 2023 WL 1451560 (D. Minn. Feb. 1, 2023).

## V.    Mr. Nitzkin's claim that the BOP incorrectly calculated his FTCs is moot and 18 U.S.C § 3632(d)(4)(A)(ii) does not allow for retroactive or pro-rated earning of credits.

In Ground Four of his Petition, Mr. Nitzkin argues that the BOP has improperly calculated the total amount of his FTCs, claiming that he should be earning FTCs at a rate of 15 days of FTCs, rather than 10 days of FTCs, for every 30 days of programming because he has been assigned a Low or Minimum PATTERN score over two consecutive assessments. In its Response, the BOP explained that, according to language of 18 U.S.C § 3632(d)(4)(A)(ii), to earn 15 days of FTCs for every 30 days of programming, a person must be "determined by the Bureau of Prisons to be at a minimum or low risk for recidivating," and then "*over 2 consecutive assessments* . . . not increase[] their risk of

recidivism." (*Id.*) (emphasis added). At the time that the BOP filed its Response, it argued that Mr. Nitzkin was not yet eligible to earn 15 days of FTCs for every 30 days of programming because he had been determined as having a Low PATTERN score on March 28, 2022, and then received only *one* reassessment on September 21, 2022, when he was assigned a Minimum PATTERN score. According to the BOP's Response, to earn 15 days of FTCs, Mr. Nitzkin would have had to be reassessed a second time, in addition to his September 21, 2022 assessment, and assigned a Low or Minimum PATTERN score.

But in its June 7, 2023 letter to the Court, Respondent represented that the "BOP has corrected the dates of [Mr.] Nitzkin's assessments, which has qualified him to meet the statutory requirements to begin earning FTCs at the 15-day rate as of September 24, 2022." (Doc. 12 at 2–3; Doc. 13, Ex. B.) Therefore, according to Respondent, Mr. Nitzkin's claim is moot.

As with Ground One, Mr. Nitzkin has already received the relief he seeks in his Petition. Mr. Nitzkin asks the Court to order the BOP to count his March 28, 2022 and September 21, 2022 assessments as his "two consecutive assessments" at a low or minimum risk of recidivism required to earn FTCs at the 15-day rate. The BOP has done so. The BOP recalculated Mr. Nitzkin's earned FTCs at the 15-day rate as of September 24, 2022, based on his receiving two consecutive assessments with a Low to Minimum PATTERN score in March 2022 and then in September 2022. Furthermore, Mr. Nitzkin was transferred to home confinement on May 9, 2023, and appears to have continued to earn FTCs because, based on his earned FTCs, as his projected release date has moved from October 5, 2024 (Doc. 6 ¶¶ 3, 11), to March 29, 2024, *see* BOP, *Find an Inmate*,

*supra*. The Court thus finds that it can no longer provide Mr. Nitzkin the relief he seeks because the BOP has already provided it to him, and none of the exceptions to the mootness doctrine, as discussed above, apply here. Therefore, his claim is moot and should be dismissed.

The Court next examines Mr. Nitzkin's claim that any outstanding FTCs should be awarded retroactively and pro-rated according to the number of days of EBRR programming participation. Title 18 U.S.C. §3632(d)(4)(A) states that

> [a] prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
> > (i)    A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
> >
> > (ii)   A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

*Id.* (i)–(ii). The statute's plain language does not allow for either retroactive or pro-rated awarding of FTCs. *Id.* The Court finds therefore that Mr. Nitzkin's claim that his earned FTCs should be awarded retroactively, and pro-rated according to the number of days less than 30 that he participated in EBRR programming, lacks merit and should be dismissed.

## VI.    Mr. Nitzkin's Motion for Summary Judgment should be denied.

Mr. Nitzkin filed a Motion for Summary Judgment on May 11, 2023. (Doc. 10.) He raises no new arguments in his Motion that are not included in his Petition or his Reply.

Because motions for summary judgment are not proper in habeas cases, the Court concludes that Mr. Nitzkin's motion should be denied. *Jones v. Wilson*, No. 14-cv-3246 (PJS/FLN), 2015 WL 4727285, at *2 (D. Minn. Aug. 7, 2015) (citing *Bauer v. Gonzalez*, No. 06-cv-1763, 2006 WL 2735460, at * 3 (D. Minn. Sept. 25, 2006) (denying a motion for summary judgment because it is not proper in habeas cases)) (further citations omitted).

## VII.   An evidentiary hearing is not necessary.

Finding that Mr. Nitzkin's Petition fails to state a claim that, even if true, would be cognizable in a federal habeas corpus proceeding, the Court determines that an evidentiary hearing is not necessary. *Edgemon v. Lockhart*, 768 F.2d 252, 255 (8th Cir. 1985) (citation omitted).

## RECOMMENDATION

Accordingly, based on all the above files, records, and proceedings in this action,

**IT IS RECOMMENDED** that:

1.   Petitioner Stuart Nitzkin's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) be **DENIED**;

2.   Mr. Nitzkin's Motion for Summary Judgment be **DENIED**; and

3.   This matter be **DISMISSED WITHOUT PREJUDICE**.


Date: January 22, 2024                              *s/Douglas L. Micko*
                                                    DOUGLAS L. MICKO
                                                    United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of

16

Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).